# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

OPEN SOCIETY JUSTICE INITIATIVE,  )
)
         Plaintiff,  )   No. 1:20-cv-06625 (PAE)
)
v.  )
)
OFFICE OF THE DIRECTOR OF NATIONAL  )
INTELLIGENCE  )
)
         Defendant.  )

## DECLARATION OF GREGORY M. KOCH,
## DIRECTOR, INFORMATION MANAGEMENT OFFICE,
## OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE

I, Gregory M. Koch, declare as follows:

**I.   INTRODUCTION**

1. I am the Director of the Information Management Office ("IMO"), under the Chief Operating Officer for the Office of the Director of National Intelligence ("ODNI"). I have held this position since October 9, 2020. Prior to my current position, I held various senior and supervisory roles in the ODNI, including as Deputy Director and Acting Director of IMO, Chief of Classification Management, as well as Senior Associate General Counsel for litigation in the Office of General Counsel. In addition, I held other senior and supervisory roles in the Executive Branch and within the Intelligence Community ("IC") including serving as Chief of Classification Management at the Central Intelligence Agency, as well as serving three years in the Executive Office of the President as Deputy Director (and Acting Director) of Access Management at the National Security Council. In total, I have spent over thirteen years in the U.S. Government handling and overseeing Freedom of Information Act ("FOIA"), classification, and

declassification matters, and I am recognized as a FOIA and classification/declassification subject matter expert. Prior to my U.S. Government experience, I was a civil litigation attorney in the State of New York. I earned a Juris Doctorate degree from St. John's University School of Law, and a Bachelor of Arts degree in Political Science from the State University of New York at Binghamton.

2. As part of my current duties, I am responsible for facilitating the implementation of information management-related Executive orders, laws, regulations, and ODNI policy. This function entails controlling information throughout its life cycle and includes the areas of records management, classification management and declassification, prepublication and disclosure, and responding to requests under the FOIA and the Privacy Act. In my current capacity, I administer and manage ODNI's Classification Management and Records Management programs, which, among other things, establish and implement ODNI's classification and markings policies through the creation of directives and security classification guides, in collaboration with subject matter experts.

3. Under a written delegation of authority by the Director of National Intelligence ("DNI") pursuant to Executive Order 13526, *Classified National Security Information*, I hold original classification authority at the "TOP SECRET" level. See Exec. Order No. 13526 § 1.3(c), 75 Fed. Reg. 707, 708 (Dec. 29, 2009) [hereinafter "E.O. 13526"]. I am authorized, therefore, to make original classification and declassification decisions for intelligence information up to and including the TOP SECRET level. In my current position, I am the final decision-making authority regarding the initial processing of FOIA requests for ODNI. I am also responsible for the classification review of ODNI documents and information that may be the subject of court proceedings, information provided to the Congress, or public requests for information under the

FOIA, 5 U.S.C. § 552, as amended, as well as the Privacy Act of 1974, 5 U.S.C. § 552a, as amended.

4. Through the exercise of my official duties, I have become familiar with this civil litigation and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

## II. RESPONSIBILITES AND AUTHORITIES OF THE DIRECTOR OF NATIONAL INTELLIGENCE

5. Through the exercise of my official duties, I support the DNI. Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-62, 3698-99 (2004) (amending Sections 102 through 104 of Title 1 of the National Security Act of 1947). The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended. 50 U.S.C. §§ 3001–3234 [hereinafter the National Security Act]. Subject to the authority, direction, and control of the President, the DNI serves as the head of the IC, and as the principal adviser to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to the national security. 50 U.S.C. § 3023(b)(1), (2). The National Security Act also created the ODNI. 50 U.S.C. § 3025(a). The function of the ODNI is to assist the DNI in carrying out his or her duties and responsibilities under the Act and other applicable provisions of law, and to carry out such other duties as may be prescribed by the President or by law. 50 U.S.C. § 3025(b).

6. The responsibilities and authorities of the DNI include ensuring that national intelligence is provided to the President, heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and Congress. 50 U.S.C. § 3024(a)(1). The DNI is charged with establishing the objectives of; determining the requirements and priorities for; and managing and directing the tasking, collection, analysis,

production, and dissemination of national intelligence by elements of the IC. 50 U.S.C. § 3024(f)(1)(A). The DNI's other authorities include coordination of relations between elements of the IC and the intelligence or security services of foreign governments or international organizations on intelligence matters and monitoring and implementing the execution of the National Intelligence Program. See, e.g., 50 U.S.C. §§ 3024(c), (k), (n).

7. The DNI is statutorily required to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the IC for the classification of information under applicable law, Executive orders, or other Presidential directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(2)(A), (B). Similarly, section 1.3(b)(8) of Executive Order 12333, as amended, mandates that the DNI "[s]hall protect, and ensure that programs are developed to protect, intelligence sources, methods, and activities from unauthorized disclosure." 46 Fed. Reg. 59941 (Dec. 4, 1981), as amended by Exec. Order No. 13470, 73 Fed. Reg. 45325, 453287 (July 30, 2008).

### III. ODNI FOIA POLICY AND PROCEDURE

8. ODNI responds to all perfected FOIA requests in compliance with FOIA and in a manner that is fair and reasonable to each requester. Because ODNI receives hundreds of FOIA requests each year, it generally follows a "first-in, first-out" system for processing them.

9. When IMO receives a FOIA request, it assigns an individualized case number to it. IMO then assesses whether intelligence information is sought and if the acknowledgement of whether or not ODNI possesses such information would itself reveal classified information or intelligence sources or methods. Where this is not the case, IMO tasks relevant records custodians who are likely to have responsive records to conduct a search. IMO may use searches conducted

in response to prior or similar requests as a starting point for responding to the current request. IMO also sends an Acknowledgement Letter to the requester acknowledging receipt of the FOIA request and indicating the assigned case number.

10. Because ODNI assists the DNI in carrying out his duties and responsibilities as the head of the IC and the principal adviser to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to the national security, many of ODNI's records include information from other agencies who contribute to the all-source intelligence often provided by the DNI to policymakers.

### IV. PLAINTIFF'S FOIA REQUEST AND ODNI'S RESPONSE

11. By email dated July 20, 2020, Plaintiff, the Open Society Justice Initiative ("OSJI"), sent a FOIA request to IMO seeking the following records:

"Reports (including annexes) related to the killing of Jamal Khashoggi provided in 2020 by ODNI to Congress pursuant to sections 1277 and 5714 of the National Defense Authorization Act for Fiscal Year 2020 (P.L. 116-92) and the Intelligence Authorization Act."

12. By letter dated July 22, 2020, IMO acknowledged receipt of OSJI's FOIA request, granted its request for a fee waiver, denied the request for expedited processing, and assigned the request tracking number DF-2020-00301.

13. On August 19, 2020, Plaintiff filed its complaint in the instant case.

14. By letter dated October 8, 2020, ODNI provided Plaintiff with its response, documenting that 26 pages were being released and maintaining ODNI's determination that the remaining document must be withheld pursuant to FOIA exemptions (b)(1), (b)(3), and (b)(6). Finally the letter asserted that the remaining record was "denied in full pursuant to FOIA exemptions (b)(1) and (b)(3)."

15. In sum, ODNI produced in whole or in part 26 pages of responsive records, consisting of correspondence from ODNI to various members of Congress. One other responsive record reviewed by ODNI was withheld in full, which as discussed below is a two-page National Intelligence Council Memorandum February 7, 2020 provided to Congress in response to sections 1277 and 5714 of the FY 20 NDAA. I understand that Plaintiff is challenging neither the sufficiency of the search nor the withholdings taken in the 26 pages ODNI released in whole or in part. Therefore, this declaration addresses only the record withheld in full.

## V. INFORMATION AT ISSUE

16. As noted above, the ODNI ultimately produced in whole or in part 26 responsive pages in this case. ODNI determined that it could produce in whole or in part these records responsive to Plaintiff's request because the records, as released, did not reveal any classified or statutorily protected information.

17. The DNI's February 20, 2020 letters to Congressional Leadership and the appropriate Congressional Committees[1] which were produced to Plaintiff and are attached as Exhibit A, "respond[] to sections 1277 and 5714 of the National Defense Authorization Act for Fiscal Year 2020 (P.L. 116-92) ('FY 20 NDAA')" and describe the legal requirements of those sections of the FY 20 NDAA. As the DNI stated:

> Section 1277 provides for an unclassified report from the Director of National Intelligence, which may include a classified annex, consisting of a "determination and presentation of evidence with respect to the advance knowledge and role of any current or former official of the Government of Saudi Arabia or any current or former senior Saudi political figure over the directing, ordering, or tampering of evidence in the killing of Washington Post columnist Jamal Khashoggi." Section 1277 further provides that the report include "a list of foreign persons that the Director of National Intelligence has high confidence . . . were responsible for, or

---

[1] Specifically these letters were sent to: the Speaker of the House, Senate Majority Leader, House and Senate Minority Leaders, Chairman and Vice Chairmen of the Senate Select Committee on Intelligence, Chairman and Ranking Member of the House Permanent Select Committee on Intelligence, Chairman and Ranking Member of the Senate Foreign Relations Committee, and the Chairman and Ranking Member of the House Foreign Affairs Committee.

complicit in, ordering, controlling, or otherwise directing an act or acts contributing to or causing the death of Jamal Khashoggi; . . . knowingly and materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, [ such activities described above]; . . . or impeded the impartial investigation of the killing of Jamal Khashoggi, including through the tampering of evidence relating to the investigation."

Section 5714 of the FY20 NDAA provides for an unclassified report from the Director of National Intelligence on the death of Jamal Khashoggi, consistent with protecting sources and methods, including "identification of those who carried out, participated in, ordered, or were otherwise complicit in or responsible for the death of Jamal Khashoggi."

The DNI concluded, "[c]onsistent with the protection of sources and methods, the Office of the Director of National Intelligence cannot provide additional information pursuant to sections 1277 and 5714 of the FY20 NDAA at the unclassified level. Nonetheless, we are transmitting under separate cover a classified annex that supplements this letter with additional information."

18. ODNI is unable to provide Plaintiff with additional detail concerning the February 7, 2020 two-page National Intelligence Council Memorandum beyond the detail in the 26 pages already provided. Doing so would reveal classified and statutorily protected information that is itself exempt from disclosure under FOIA Exemptions 1 and 3; namely, classified intelligence information, as well as the intelligence priorities and capabilities and sensitive details about methods and activities, or lack thereof, in this area of inquiry. As the DNI confirmed in his July 21, 2020 letter to the Chairman and Vice Chairman of the Senate Select Committee on Intelligence[2] and which is attached as Exhibit B, the information withheld in full has been through a thorough declassification review on two separate occasions and both reviews "confirmed yet again that disclosure of additional details surrounding Mr. Khashoggi's murder would undermine U.S. intelligence sources and methods. . . ." This letter was provided to Plaintiff on 8 October 2020.

---

[2] Copies of this letter were also sent to Senator Ron Wyden, and the Chairman of the House Permanent Select Committee on Intelligence, Congressman Adam Schiff.

The DNI stated that the sole remaining document's current classification "is the lowest possible classification that can be given to this intelligence without significantly threatening the national security interests of the U.S."

A. **Exemption 1**

19. Exemption 1 provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). For the reasons stated below, I have determined that the information withheld is currently and properly classified.

20. Section 1.1(a) of E.O. 13526 provides that information may be originally classified only if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of E.O. 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage.

21. As an original classification authority, I have determined that withheld information responsive to Plaintiff's request is currently and properly classified. This information is owned by and is under the control of the U.S. Government. As described below, the information falls within classification categories § 1.4(c) and § 1.4(d) of E.O. 13526 because it concerns "intelligence activities (including covert action), [or] intelligence sources or methods" and "foreign relations or

8

foreign activities of the United States." Further, its unauthorized disclosure could reasonably be expected to result in damage to the national security.

22. None of the information at issue has been classified in order to conceal violations of law, inefficiency or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. Further, the responsive information is properly marked in accordance with § 1.6 of E.O. 13526.

23. The information withheld pursuant to Exemption 1 describes properly classified intelligence information. Release of the information provided by ODNI to Congress in response to sections 1277 and 5714 of the FY 20 NDAA would reveal intelligence activities and intelligence sources and methods such as collection capacity, or lack thereof, and the existence or non-existence of relationships with foreign entities. The disclosure of such intelligence activities and information relating to intelligence sources and methods can permit foreign intelligence services and other groups to disrupt IC activities and/or exploit perceived weaknesses, thereby compromising intelligence operations and impairing the national security of the United States.

24. Additionally, information withheld pursuant to Exemption 1 describes particular intelligence interests of the U.S. Government. Intelligence interests are synonymous with intelligence sources and methods. Intelligence interests show the strategic direction of the U.S.' intelligence practice. As the head of the IC, particular topics that are of interest to the DNI would be revealing of the DNI's and the U.S. Government's intelligence objectives. Such a revelation, through the disclosure of the withheld information, would reveal details of the IC's collection efforts, or lack thereof. As a result, the IC's efforts may be thwarted or made more difficult, reducing its effectiveness, requiring a diversion of resources, and resulting in a loss of valuable

intelligence. Furthermore, disclosure could reasonably be expected to cause irreparable harm and impair the DNI and the IC's ability to carry out its core functions by revealing the subjects and areas of interest, and the depth of the IC's knowledge therein. Moreover, information about the DNI's or any IC element's interest in a particular area or event may benefit a foreign intelligence service or terrorist organization by enabling it to redirect its resources to circumvent IC intelligence activities, and generally enhance its intelligence or counterintelligence activities at the expense of the U.S. national security. Accordingly, Exemption 1 protects this information from disclosure.

**B. Exemption 3**

25. FOIA Exemption 3 protects information that is specifically exempted from disclosure by statute. A statute authorizing withholding under Exemption 3 must (A)(i) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (A)(ii) establish particular criteria for withholding or refer to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

26. Section 102A(i)(1) of the National Security Act provides that "the [DNI] shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). The sources and methods provision of the National Security Act has long been held to qualify as a withholding statute in accordance with FOIA Exemption 3. The National Security Act applies in this case to preclude disclosure of the withheld information as a whole.

27. Moreover, the protections authorized by the National Security Act apply to the same information for which Exemption 1 was asserted to protect intelligence sources and methods; all information in the withheld record relates to intelligence sources or methods. Although I understand the ODNI does not need to show that disclosure would be harmful in order to protect intelligence sources and methods under FOIA Exemption 3 and the National Security Act, I note

that the release of the information withheld under FOIA Exemptions 1 and 3 is reasonably likely to significantly impair the ODNI and IC's ability to carry out core missions of gathering, analyzing, and integrating intelligence.

### C. <u>Segregability</u>

28. With regard to ODNI's production of the 26 pages to the Plaintiff, ODNI conducted a review and released all reasonably segregable, non-exempt information.

29. With regard to the remainder of the response to Plaintiff's request, ODNI has determined that the neither the record nor portions of the record may be released pursuant to the exemptions identified above. As explained in this declaration, doing so would reveal classified and statutorily protected information that is itself exempt from disclosure under Exemptions 1 and 3. Any such release or acknowledgment, in whole or in part, would cause damage to the national security.

## VI. <u>CONCLUSION</u>

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 9 day of November 2020.

_____
Gregory M. Koch
Director, Information Management Office