**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OPEN SOCIETY JUSTICE INITIATIVE,

        Plaintiff,

        v.

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,

        Defendant.

20 Civ. 06625 (PAE)

## MEMORANDUM OF LAW IN SUPPORT OF
## THE OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE'S
## MOTION FOR SUMMARY JUDGMENT

AUDREY STRAUSS
Acting United States Attorney for
the Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697/2528
peter.aronoff@usdoj.gov
natasha.teleanu@usdoj.gov

Of Counsel:

PETER ARONOFF
NATASHA W. TELEANU
Assistant United States Attorneys

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY....................................................................1

    I.       The National Defense Authorization Act for Fiscal Year 2020 ...............................1

    II.      The ODNI's Response to Congress Regarding Sections 1277 and 5714 of the NDAA.........................................................................................................................2

    III.     Plaintiff's FOIA Request and the ODNI's Response .............................................3

ARGUMENT...................................................................................................................................5

    I.       Standards of Review ................................................................................................5

    II.      The ODNI Properly Withheld the NICM Pursuant to FOIA Exemption 1 .............7

    III.     The ODNI Properly Withheld the NICM Pursuant to FOIA Exemption 3 ..........10

    IV.     The ODNI Has Released All Reasonably Segregable, Non-Exempt Information ............................................................................................................13

CONCLUSION ………………………………………………………………………………..14

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGES**

*ACLU v. DOD*,
    628 F.3d 612 (D.C. Cir. 2011) .................................................................................. 14

*ACLU v. DOD*,
    901 F.3d 125 (2d Cir. 2018) ..................................................................................... 10

*ACLU v. DOJ*,
    681 F.3d 61 (2d Cir. 2012) ............................................................................... *passim*

*Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*,
    830 F.2d 331 (D.C. Cir. 1987) .................................................................................. 14

*Baldrige v. Shapiro*,
    455 U.S. 345 (1982) .................................................................................................... 9

*Berman v. CIA*,
    501 F.3d 1136 (9th Cir. 2007) .................................................................................. 14

*Cable News Network v. FBI*,
    384 F. Supp. 3d 19 (D.D.C. 2019) ............................................................................ 16

*Carney v. DOJ*,
    19 F.3d 807 (2d Cir. 1994) ................................................................................... 9, 10

*CIA v. Sims*,
    471 U.S. 159 (1985) ..................................................................................... 14, 15, 16

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ........................................................................................................ 9

*Elec. Privacy Info Ctr. v. NSA*,
    678 F.3d 926 (D.C. Cir. 2012) .................................................................................. 16

*Ferguson v. FBI*,
    1995 WL 329307 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996) ................... 10

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990) ............................................................................ 15, 16

*Grand Cent. P'ship v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) ....................................................................................... 9

*Halperin v. CIA,*
 629 F.2d 144 (D.C. Cir. 1980) ............................................................................... 15

*Hayden v. NSA*,
 608 F.2d 1381 (D.C. Cir. 1979) ............................................................................. 16

*Hodge v. FBI*,
 703 F.3d 575 (D.C. Cir. 2013) ............................................................................... 17

*James Madison Project v. CIA*,
 607 F. Supp. 2d 109 (D.D.C. 2009) ....................................................................... 15

*James Madison Project v. DOJ*,
 436 F. Supp. 3d 195 (D.D.C. 2020) ....................................................................... 13

*John Doe Agency v. John Doe Corp.*,
 493 U.S. 146 (1989) ................................................................................................. 9

*Maynard v. CIA*,
 986 F.2d 547 (1st Cir. 1993) .................................................................................. 15

*N.Y. Times Co. v. DOD*,
 499 F. Supp. 2d 501 (S.D.N.Y. 2007) .................................................................... 14

*N.Y. Times Co. v. DOJ*,
 872 F. Supp. 2d 309 (S.D.N.Y. 2012) .................................................................... 10

*Nat'l Sec'y Archive Fund, Inc. v. CIA*,
 402 F. Supp. 2d 211 (D.D.C. 2005) ....................................................................... 15

*Wilner v. NSA*,
 592 F.3d 60 (2d Cir. 2009) ............................................................................... 10, 14

*Wolf v. CIA*,
 473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 10

**STATUTES**

5 U.S.C. § 552 .................................................................................................... *passim*

50 U.S.C. § 403(d)(3) ................................................................................................ 15

50 U.S.C. § 403-1(i)(1) ............................................................................................. 16

50 U.S.C. § 3024(i)(1) ........................................................................................ 14, 15

Pub. Law No. 116-92 (Dec. 20, 2019) .................................................................. 4, 7

Defendant the Office of the Director of National Intelligence ("ODNI") respectfully submits this memorandum of law in support of its motion for summary judgment in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

This lawsuit concerns a FOIA request by plaintiff Open Society Justice Initiative ("Plaintiff") for reports related to the killing of Jamal Khashoggi provided to Congress by the ODNI in 2020 in response to sections 1277 and 5714 of the National Defense Authorization Act for Fiscal Year 2020 (the "NDAA"). Pub. Law No. 116-92 (Dec. 20, 2019). In response to Plaintiff's FOIA request, the ODNI released 26 pages of records, portions of which were withheld pursuant to FOIA Exemptions 1 and 3, 5 U.S.C. § 552(b)(1), (3), and withheld one two-page record in full, also pursuant to Exemptions 1 and 3. Plaintiff challenges only the ODNI's withholding of the record withheld in full: a two-page classified memorandum produced by the National Intelligence Council to the appropriate Congressional Committees as provided by the relevant provisions of the NDAA. Because disclosure of any portion of this record would reveal classified and statutorily protected intelligence information—and would harm national security by revealing the Intelligence Community's intelligence collection capacity, or lack thereof, and the existence or non-existence of relationships with foreign entities—the record was properly withheld in full under FOIA Exemptions 1 and 3.

## BACKGROUND AND PROCEDURAL HISTORY

### I. The National Defense Authorization Act for Fiscal Year 2020

In December 2019, the President signed the NDAA. *See* Pub. Law No. 116-92 (Dec. 20, 2019). Section 1277 of the NDAA provides that:

> [T]he Director of National Intelligence shall submit to the appropriate congressional committees a report consisting of—(1) a determination and

presentation of evidence with respect to the advance knowledge and role of any current or former official of the Government of Saudi Arabia or any current or former senior Saudi political figure over the directing, ordering, or tampering of evidence in the killing of Washington Post columnist Jamal Khashoggi; and (2) a list of foreign persons that the Director of National Intelligence has high confidence—(A) were responsible for, or complicit in, ordering, controlling, or otherwise directing an act or acts contributing to or causing the death of Jamal Khashoggi; (B) knowingly and materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, an activity described in subparagraph (A); or (C) impeded the impartial investigation of the killing of Jamal Khashoggi, including through the tampering of evidence relating to the investigation.

*Id.* § 1277(a). The NDAA further provides that the report "shall be submitted in unclassified form, but may include a classified annex," and that the "name of each foreign person listed in the report . . . shall be included in the unclassified portion of the report unless the Director of National Intelligence determines that such disclosure would undermine United States intelligence sources and methods or threaten the national security interests of the United States." *Id.* § 1277(b).

Section 5714 of the NDAA states that "the Director of National Intelligence shall submit to Congress a report on the death of Jamal Khashoggi, consistent with protecting sources and methods. Such report shall include identification of those who carried out, participated in, ordered, or were otherwise complicit in or responsible for the death of Jamal Khashoggi," and the report "shall be submitted in unclassified form." *Id.* § 5714.

## II.     The ODNI's Response to Congress Regarding Sections 1277 and 5714 of the NDAA

On February 20, 2020, the ODNI informed Congress that "[c]onsistent with the protection of sources and methods, the Office of the Director of National Intelligence cannot provide additional information pursuant to sections 1277 and 5714 of the FY20 NDAA at the unclassified level." Declaration of Gregory M. Koch ("Koch Decl.") ¶ 17 & Ex. A. Instead, the ODNI transmitted "a classified annex . . . with additional information." *Id.*

During his confirmation hearing on May 5, 2020, the Director of National Intelligence ("DNI") "committed to review all the underlying intelligence and the ODNI's prior responses." Koch Decl. ¶ 18 & Ex. B. On July 21, 2020, following his review and conversations with other intelligence community leaders, the DNI "confirm[ed] that the process for declassifying the information required by Sections 1277 and 5714 was conducted consistent with law, [Intelligence Community] policy, and applicable Executive Orders." Koch Decl., Ex. B. The DNI noted that "[i]n response to [Congress's] concerns about the ODNI's compliance with Sections 1277 and 5714, this process was again conducted to ensure that any information that could be presented in an UNCLASSIFIED format was provided as required." *Id.* The DNI explained that both the initial review, as well as his second review, "confirmed yet again that the disclosure of additional details surrounding Mr. Khashoggi's murder would undermine U.S. intelligence sources and methods." *Id.* The DNI also confirmed that the previously transmitted classified annex—which was a "downgraded memorandum produced by the National Intelligence Council" following a "brief[ing] on the issue at the compartmented level"—represents "the lowest possible classification that can be given to this intelligence without significantly threatening the national security interests of the United States." *Id.*

### III. Plaintiff's FOIA Request and the ODNI's Response

This is Plaintiff's second FOIA request and lawsuit seeking ODNI records regarding the Khashoggi killing. In December 2018, Plaintiff requested from the ODNI, among other agencies, "all records relating to the killing of U.S. resident Jamal Khashoggi." *See* Compl. (ECF No. 1), 19 Civ. No. 00234. In response, the ODNI acknowledged that the Intelligence Community has assessed information concerning Mr. Khashoggi's killing, but has not disclosed the volume or type(s) of intelligence or the sources and methods implicated because those details are classified

and statutorily protected. *See generally* ECF Nos. 111-116, 139-142, 19 Civ. 00234 ("*OSJI I*"). Accordingly, the ODNI, along with the CIA, provided a "no number, no list" response to Plaintiff's December 2018 FOIA request to the extent it sought such protected records and information. *See id.* The parties' cross motions for summary judgment regarding the agencies' no number, no list responses in this related case are currently pending before the Court in *OSJI I*.

On July 20, 2020, Plaintiff submitted to the ODNI a second FOIA request that is the subject of this action. *See* Koch Decl. ¶ 11; *see also* Compl. (ECF No. 1) ¶ 27 & Ex. B (ECF No. 1-2). Plaintiff's July 20, 2020 request sought "[r]eports (including annexes) related to the killing of Jamal Khashoggi provided in 2020 by ODNI to Congress pursuant to sections 1277 and 5714 of the National Defense Authorization Act for Fiscal Year 2020 (P.L. 116-92) and the Intelligence Authorization Act" (the "Request"). *See* Compl., Ex. B at 6. The ODNI responded to Plaintiff by letter dated July 22, 2020, in which the ODNI acknowledged receipt of the Request, granted Plaintiff's request for a fee waiver, denied Plaintiff's request for expedited processing, and assigned the Request tracking number DF-2020-00301. Koch Decl. ¶ 12. Plaintiff commenced this action on August 19, 2020. *See* Compl.

On October 8, 2020, the ODNI provided Plaintiff with 26 pages of records, portions of which were withheld pursuant to FOIA Exemptions 1, 3, and 6, and withheld one two-page record in full, pursuant to FOIA Exemptions 1 and 3. Koch Decl. ¶ 14. The 26 pages of records released to Plaintiff consisted of correspondence from the ODNI to various members of Congress. *See id.* ¶ 15 & Ex. A. The record withheld in full is a two-page National Intelligence Council Memorandum, dated February 7, 2020 (the "NICM"), that was provided to Congress in response to sections 1277 and 5714 of the NDAA. *Id.* ¶ 15. Based on discussions with Plaintiff's

counsel, the ODNI understands that Plaintiff challenges only the ODNI's withholding of the NICM. *See* Koch Decl. ¶¶ 15, 18.[1]

## ARGUMENT

### I. Standards of Review

FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423). Thus, while FOIA generally requires disclosure of agency records, the statute recognizes "that public disclosure is not always in the public interest," *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982); *accord ACLU v. DOJ*, 681 F.3d 61, 69 (2d Cir. 2012), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001).

FOIA cases are typically decided through motions for summary judgment. *See, e.g.*, *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). In a FOIA case, "[a]ffidavits or declarations supplying facts . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden" on summary judgment. *Carney*, 19 F.3d at 812

---

[1] Because the ODNI understands that Plaintiff does not contest the adequacy of the ODNI's search, we do not detail that search in this motion. *See* Koch Decl. ¶ 15.

(footnote omitted).² An agency's declaration must be "accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (quotation marks omitted). "Ultimately, an agency may invoke a FOIA exemption if its justification 'appears logical [and] plausible.'" *ACLU v. DOJ*, 681 F.3d at 69 (quoting *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009)); *ACLU v. DOD*, 901 F.3d 125, 134 n.9 (2d Cir. 2018).

In the national security context, moreover, courts must accord "substantial weight" to agency declarations. *Wilner*, 592 F.3d at 73; *accord ACLU v. DOJ*, 681 F.3d at 69; *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). In reviewing an agency's declarations regarding such matters, courts "consistently defer[] to executive [declarations] predicting harm to the national security, and have found it unwise to undertake searching judicial review." *ACLU v. DOD*, 901 F.3d at 134; *see also ACLU v. DOJ*, 681 F.3d at 70-71 ("Recognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies regarding whether disclosure of the [withheld information] would pose a threat to national security." (quoting *Wilner*, 592 F.3d at 76) (internal quotation marks omitted)). As the Second Circuit has instructed, "[j]udges do not abdicate their judicial role by acknowledging their limitations and deferring to an agency's logical and plausible justification in the context of national security; they fulfill it." *ACLU v. DOD*, 901 F.3d at 136.

---

² The ODNI has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *New York Times v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (noting Local Civil Rule 56.1 statement not required in FOIA actions in this Circuit).

The ODNI properly withheld the NICM in its entirety pursuant to FOIA Exemptions 1 and 3. The NICM contains "additional information pursuant to sections 1277 and 5714 of the FY20 NDAA." Koch Decl. Ex. B. As explained further in the Koch Declaration, the ODNI properly withheld the NICM pursuant to exemptions 1 and 3 because its unauthorized disclosure would reveal classified and statutorily protected information pertaining to intelligence activities and intelligence sources and methods—or lack thereof—and could reasonably be expected to result in damage to national security. Furthermore, the ODNI disclosed all non-exempt information that reasonably could be segregated and disclosed, and properly concluded that no portion of the NICM can be released.

## II. The ODNI Properly Withheld the NICM Pursuant to FOIA Exemption 1

Exemption 1 exempts from public disclosure records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy," and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The current standard for classification is set forth in Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). Section 1.1(a) of the Executive Order lists four requirements for the classification of national security information: (1) an original classifying authority must classify the information; (2) the information must be owned by, produced by or for, or is under the control of the United States Government; (3) the information pertains to one of eight categories of information specified in the Executive Order, including "intelligence activities (including covert action), sources and methods"; and (4) its "unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security." Executive Order 13,526, § 1.1(a)(1)-(4). The protected categories of information listed in Section 1.4 of the Executive Order that are relevant here are: "intelligence activities (including

7

covert action), [or] intelligence sources or methods," and "foreign relations or foreign activities of the United States." Koch Decl. ¶ 21; *see* Executive Order 13,526, § 1.4(c), (d).

The declaration submitted by ODNI logically and plausibly demonstrates that these standards have been met regarding the classified information withheld under Exemption 1. *See* Koch Decl. ¶¶ 21-24. All of the information withheld was classified by an original classification authority; is owned by and is under the control of the U.S. Government; and pertains to intelligence activities, intelligence sources and methods, and foreign relations or foreign activities of the United States, within the meaning of section 1.4(c) and (d) of the Executive Order. *See id.* ¶ 21. The ODNI declarant is an original classification authority who has determined that the unauthorized disclosure of the NICM could reasonably be expected to result in damage to national security. *See id.* The ODNI's declaration identifies and describes the harms to national security that are reasonably expected to result should the withheld classified information be disclosed. The ODNI explains that "[r]elease of the information provided . . . to Congress in response to sections 1277 and 5714 of the FY 20 NDAA would reveal intelligence activities and intelligence sources and methods such as collection capacity, or lack thereof, and the existence or non-existence of relationships with foreign entities." *Id.* ¶ 23. Disclosing "such intelligence activities and information relating to intelligence sources and methods can permit foreign intelligence services and other groups to disrupt [United States Intelligence Community] activities and/or exploit perceived weaknesses, thereby compromising intelligence operations and impairing the national security of the United States." *Id.*

Disclosure of the withheld NICM would also disclose "particular intelligence interests of the U.S. Government." *Id.* ¶ 24. Intelligence interests, which are "synonymous with intelligence sources and methods," "show the strategic direction of the United States' intelligence practice."

8

*Id.* Disclosure of particular topics that are of interest to the ODNI would reveal the intelligence objectives of both the Director of National Intelligence and the United States Government more broadly. *Id.* Here, disclosure of the withheld information contained in the NICM "would reveal details of the [Intelligence Community's ("IC's")] collection efforts, or lack thereof." *Id.* Such a disclosure could result in the IC's efforts being "thwarted or made more difficult, reducing its effectiveness, requiring a diversion of resources, and resulting in a loss of valuable intelligence." *Id.* In addition, disclosure of the NICM would harm national security because "information about the DNI's or any IC element's interest in a particular area or event may benefit a foreign intelligence service or terrorist organization by enabling it to redirect its resources to circumvent IC intelligence activities, and generally enhance its intelligence or counterintelligence activities at the expense of the U.S. national security." *Id.*

The justifications provided in the ODNI's declaration are entirely logical and plausible. By its very nature, release of the NICM would reveal specific information about intelligence sources, methods and activities or lack thereof, and information about the United States' intelligence collection capabilities or lack thereof. Disclosure of such information can reasonably be expected to result in damage to the national security. *See, e.g.*, *James Madison Project v. DOJ*, 436 F. Supp. 3d 195, 202 (D.D.C. 2020) ("Forcing the CIA to produce [intelligence] information would mean forcing it to publicize details of certain CIA counterterrorism operations and other intelligence activities conducted abroad that are still classified."). Indeed, the NDAA itself expressly contemplates that intelligence information concerning the Khashoggi killing may remain properly classified, by providing for the submission of a classified annex. The undisputed record demonstrates, moreover, that the ODNI undertook two separate and thorough declassification reviews and downgraded the information to the lowest possible level of

9

classification, and ultimately twice determined that no information could be provided at an unclassified level. *See* Koch Decl. ¶ 18 & Ex. B. Particularly in light of the substantial deference owed to the agency's judgments regarding the classified status of records, *ACLU v. DOJ*, 681 F.3d at 69, ODNI's withholding of the NICM under Exemption 1 is proper.

### III. The ODNI Properly Withheld the NICM Pursuant to FOIA Exemption 3

Under Exemption 3, matters "specifically exempted from disclosure by [a] statute" that "leave[s] no discretion on the issue" or "establishes particular criteria for withholding" need not be disclosed. 5 U.S.C. § 552(b)(3). When assessing whether Exemption 3 applies, a court must determine (1) whether there is an applicable withholding statute, and (2) if so, whether the materials withheld is within the statute's coverage. *CIA v. Sims*, 471 U.S. 159, 167 (1985). Exemption 3 "differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)).

Section 102A(i)(1) of the National Security Act, as amended, states: "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Courts have consistently held that the National Security Act qualifies as a FOIA Exemption 3 withholding statute. *See, e.g.*, *ACLU v. DOJ*, 681 F.3d at 72-75; *ACLU v. DOD*, 628 F.3d 612, 619, 626 (D.C. Cir. 2011); *Berman v. CIA*, 501 F.3d 1136, 1137-38, 1140 (9th Cir. 2007); *N.Y. Times Co. v. DOD*, 499 F. Supp. 2d 501, 512-13 (S.D.N.Y. 2007); *see also Sims*, 471 U.S. at 167 (considering materially identical predecessor to National Security Act).

Thus, the "only remaining inquiry" for the Court is whether the NICM falls within the scope of the National Security Act. *See ACLU v. DOJ*, 681 F.3d at 73. As the Second and D.C. Circuits have recognized, the statute protects not only intelligence sources and methods themselves, but any information that "relates to" an intelligence source or method, *ACLU*, 681 F.3d at 73, or would tend to disclose an intelligence source or method, *see Halperin v. CIA*, 629 F.2d 144, 147-50 (D.C. Cir. 1980). The deference accorded to the ODNI in national security cases extends to the agency's determinations as to whether information relates to intelligence sources or methods protected by the National Security Act. *See, e.g.*, *ACLU v. DOJ*, 681 F.3d at 75 ("[a]ccording substantial weight" to agency's declarations and holding that records "relate[d] to an intelligence method within the meaning of the NSA, and accordingly, may be withheld"); *Maynard v. CIA*, 986 F.2d 547, 555 (1st Cir. 1993) ("[g]iving due deference to the agency's determination," holding that redacted information was exempt from disclosure under National Security Act, 50 U.S.C. § 403(d)(3) (predecessor to 50 U.S.C. § 3024(i)(1)), and Exemption 3); *Fitzgibbon v. CIA*, 911 F.2d 755, 762 (D.C. Cir. 1990) (noting that in determining whether withheld information relates to intelligence sources and methods for purposes of § 403(d)(3) and Exemption 3, "we accord substantial weight and due consideration to the [agency's] affidavits"); *Nat'l Sec'y Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 216 (D.D.C. 2005) ("Courts evaluating Exemption 3 claims must accord the same substantial weight to the agency's judgment as with Exemption 1 claims." (citing *Sims*, 471 U.S. at 1179)); *James Madison Project v. CIA*, 607 F. Supp. 2d 109, 126-27 (D.D.C. 2009) ("Bearing in mind its obligation to give 'substantial weight and deference' to the [agency's] declaration, the court determines that all of the information withheld falls within the scope of the National Security Act . . . ." (citing *Fitzgibbon*, 911 F.2d at 766)). The Supreme Court has recognized, moreover, that the scope of

11

intelligence sources and methods protected by the National Security Act is extremely broad, and extends to "all sources of intelligence that provide, or are engaged to provide, information the [Intelligence Community] needs to perform its statutory duties with respect to foreign intelligence." *Sims*, 471 U.S. at 169-70.[3]

The NICM plainly relates to intelligence sources and methods and thus falls squarely within the scope of the National Security Act. Koch Decl. ¶ 27 (explaining that "all information in the withheld record relates to intelligence sources and methods"). No showing of harm is necessary to withhold information under Exemption 3 and the National Security Act. *See Elec. Privacy Info Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012); *Fitzgibbon*, 911 F.2d at 764; *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979); *Cable News Network v. FBI*, 384 F. Supp. 3d 19, 32 (D.D.C. 2019). In enacting the National Security Act, Congress made the determination that unauthorized disclosure of information relating to intelligence sources and methods would be harmful. *See Sims*, 471 U.S. at 170-73; *cf. Elec. Privacy Info. Ctr.*, 678 F.3d at 931. Nevertheless, the ODNI has demonstrated that public disclosure of the NICM would cause harm, because its release "is reasonably likely to significantly impair the ODNI and [the intelligence community's] ability to carry out core missions of gathering, analyzing, and integrating intelligence." Koch Decl. ¶ 27.

As the ODNI has logically and plausibly explained, the NICM relates to intelligence sources and methods and is therefore exempt from disclosure under Exemption 3 and the National Security Act.

---

[3] *Sims* addressed Section 102(d)(3), a predecessor provision within the National Security Act, which authorized the Director of the CIA to protect intelligence sources and methods. *See id.* at 169. The Intelligence Reform and Terrorism Prevention Act of 2004 amended the National Security Act, and provided that the DNI "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1), Pub. L. No. 108-458, 118 Stat. 3638.

**IV.     The ODNI Has Released All Reasonably Segregable, Non-Exempt Information**

Finally, the ODNI's declaration establishes its compliance with FOIA's requirement that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). With respect to this requirement, an agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (quotation marks omitted).

Here, there is no basis to disturb the presumption that the ODNI has disclosed all reasonably segregable material in response to Plaintiff's FOIA request. The ODNI's declarant has affirmed that ODNI conducted a review and released all reasonably segregable, non-exempt information in the 26 pages produced to Plaintiff. *See* Koch Decl. ¶ 28. Plaintiff does not challenge any of the redactions to those pages. With respect to the NICM, the ODNI determined that "neither the record nor portions of the record may be released" because such disclosure "would reveal classified and statutorily protected information that is itself exempt from disclosure under Exemptions 1 and 3." *Id.* ¶ 29. The ODNI has affirmed that "[a]ny such release or acknowledgment, in whole or in part, would cause damage to the national security." *Id.* Indeed, "the information withheld in full has been through a thorough declassification review on two separate occasions and both reviews 'confirmed yet again that disclosure of additional details surrounding Mr. Khashoggi's murder would undermine U.S. intelligence sources and methods.'" Koch Decl. ¶ 18 & Ex. B. Accordingly, the ODNI properly withheld the NICM in its entirety.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the ODNI.

Dated: November 9, 2020
      New York, New York

                              Respectfully submitted,

                              AUDREY STRAUSS
                              Acting United States Attorney
                              Southern District of New York

By:   */s/ Natasha W. Teleanu*
        PETER ARONOFF
        NATASHA W. TELEANU
        Assistant United States Attorneys
        86 Chambers Street, Third Floor
        New York, New York 10007
        Telephone: (212) 637-2697/2528
        Facsimile: (212) 637-2717
        E-mail: peter.aronoff@usdoj.gov
                    natasha.teleanu@usdoj.gov